Good morning. May it please the Court. My name is Mike Farnell. I represent Greg and Arlene Vandehey in this matter of the Appellants. I would like to reserve a couple of minutes for rebuttal, if I could. By way of very brief background, my client, Mr. Vandehey, was working with an acquaintance, Mr. Eugene Brockman, on a farm, clearing fence rows and brush from farmland to consolidate farm plots for the purpose of farming. In the course of doing so, he was trapped between the bucket of a track hoe and a dump truck and severely injured. Before he could do anything about that, Allstate sued him, his wife, and Mr. and Mrs. Brockman. Allstate issued to Mr. Brockman and his wife... Sued them for declaratory relief. Sued them for declaratory relief, that's right, seeking a ruling that there was no coverage under the policy. Allstate issued to the Brockmans a personal umbrella policy. That policy has an exclusion for business activities. That policy has a definition of business which excludes farming. The first and last question in this case should have been, was Mr. Brockman farming on the day in question? The Court correctly ruled that he was. Unfortunately, the Court continued after that to find that there was a distinction between personal farming and business farming. And Mr. Vandehey respectfully suggests that is when the Court erred. In Oregon, we have a very strict, disciplined template for analyzing and interpreting insurance policies. It begins and ends with Hoffman Construction v. Fred S. James. That case clearly instructs that intent in a policy is driven only by the words used. The terms and conditions control the interpretation of the insurance policy. That's embodied in ORS 742-061, or 016, excuse me, and very clearly in the Hoffman case. What happens when a term used in the policy is susceptible under objective analysis of two meanings? When there is two plausible interpretations that have been proffered of a term, then two analytical steps follow. The first is that that term is examined in the immediate context and the broad context of the policy as a whole. If after that exercise it remains susceptible to two competing reasonable interpretations, the term is then interpreted against the insurance company and in favor of the insurer. And what do you mean it's interpreted in the immediate and broad context of the insurance policies? For instance, do we take into consideration other insurance policies that the insured has? No. I didn't think so. All right. So what do you mean by those broad abstract statements, the immediate and broad context? Does that mean that if the plain meaning doesn't, pardon me, I'm a Californian, that we use plain meaning and then we go to the objective expectations of a reasonable promisee, then we go to contra profferentum. That's the three steps that we use in California. Is it the same in Oregon? Actually, Your Honor, we don't have the reasonable expectations doctrine yet adopted or not adopted by our Supreme Court. What we mean by immediate context here is that you take the word in question, and if what Your Honor is referring to is the word farm or farming in the immediate context, then we take a look at that particular provision. And by immediate context, we mean the section of the policy in which it appears. The term farm here is not defined. The Oregon Supreme Court then goes to the dictionary. The term farm means engaged in the practice of agriculture. The question then is, is clearing fence rows and brush from farm to consolidate plots of land for farming the practice of agriculture? Well, it could be for Mr. Brockman, but not, pardon me, it could be for the owner of the property, farming, but it could be just contracting for the contractor, right? Well, Your Honor, I'm sensitive to that point, and I anticipated that question because it's one I would ask as well. And the way I would answer that question is that if you put the shovel in Mr. Vanashee's hands, he would be the owner of the property, and if he dug up that fence row or that brush, he would be farming. He would be farming. If he subcontracts the very same exercise and hands the shovel to Mr. Brockman to do the very same thing, he shouldn't be deemed not to be farming. Just a second. Not so fast, as we say. The man who owns the property doesn't need a license from the state to do the work that he's doing. The contractor to do the work for the man who owns the property needs the contractor's license, doesn't he? Yes. Now, doesn't that mean that the man who's doing the work for the farmer has a different legal role? He is a contractor, not a farmer? With all due respect, no. In my respectful opinion, and I believe the law would support this, you must focus on the activity in which the person is engaged on the very day in question. And in support of that, I'd like to cite to you a couple of out-of-state cases. Unfortunately, we don't have much in the state of Oregon to help us out. This case comes from Illinois, and it says, The issue is not what appellant's main business interest is, but solely whether or not the application and use of, in this case, digested sludge on farmlands is serving an agricultural purpose. That's the county of Grundy case. Another case from Illinois. Since the excavation, very analogous here factually, to be undertaken by the Hammonds serves an agricultural purpose, we need look no further into their intent or any of their other business activities or their ultimate business objective. There is a long line of cases here, which we cite in the briefs, which talks about folks engaged in any manner of other collateral business activities, but what drives the finding of intent under the insurance policy is whether what they were doing at the time that the liability arose, was that a farming operation? It looked at from the point of view of the underwriter, who was underwriting the contractor's umbrella policy. He's saying, I'm giving you an umbrella policy, but I'm excluding damages caused in your business, right? Part of the business that he's excluding is the work as a licensed contractor, work which you've agreed he can only do because of his license. You think that he's saying, but part of your business, if it's done in agriculture for somebody else, not for your own farm, but for somebody else, would it exclude that also? Well, my first response to that is this underwriter was not underwriting a business policy. Exactly, he was excluding business. This is a personal lines insurance policy, which I'm sure Mr. Foley will talk about over and over again. Allstate was free to write this policy in any way that it wanted to. It is the exclusive drafter. This is not a negotiated contract. It, of its own accord, accepted farming from the business definition. It didn't have to do that. It chose to do that. When you look at the coverage grant, the coverage grant provides that it's related to any business, and the words related to are associated with business. But when you look at the exclusion and you look at the word farming, there's not anything associated with that, arising from, related to. Doesn't that imply that it's broader when it's related to? Which term is broader? Related to any business. The underwriter had determined that if it relates to business, it's not covered. That same language is not associated with the word farming. That's because farm is in the definition of what a business is. Business does not include farming. There really is very little to talk about in terms of rising out of. You're defining a term. The term business does not include farming. One of the problems I have fundamentally with where the trial court and Allstate basically postulate this case is that you have, in the record, a quote from the trial court where it says, here it's possible that you get divergent results depending on whether you've tried to figure out what they've meant or what they've said. That's really Appellant's chief concern here, is that this case must be driven based upon a very principled application of the Hoffman analysis. If you look at Allstate's response brief, you will not find a citation to Hoffman anywhere in it. If you look at the table of authorities, it lists Hoffman three times. Every one of those is its inclusion within a block quote. Nowhere has Allstate undertaken the correct analysis. They have put the cart before the horse. They have taken a generalized finding or feeling of intent and reverse engineered their position based upon what they think they meant. And that's exactly what the trial court did. The trial court found that Mr. Brockman was farming, but sensed that it must not be covered because there's a distinction between personal and business, and he called it personal farming, which was meant to be covered by the policy. Now, you in your brief treat the personal farming statement as dealing with non-remunerative farming, which is plainly not what he meant and couldn't be right under the statute. What do you understand that he did mean? Well, do I understand what farming means? No, what the district court meant by personal farming. Oh, well, I'm not quite sure. What I do know is that personal farming as a gloss on that term makes no sense because if you're going to take an exception from the definition of business and make it something that's not business in the first place, the whole thing becomes meaningless. I suspect what he meant was farming by the person who is the farmer, i.e., the person who is ultimately doing the agricultural activity and generating some product as opposed to when one divides it up into pieces. And I understand your point that that's an unusual concept, but equally unusual is the notion that somebody who is doing a single activity in many different contexts is farming. In just ordinary language you wouldn't say, oh, what are you doing today? I'm farming. Why? Well, again, the insurance company is the master of the document. In Oregon, exclusions are strictly for sure. If you asked your client that day what he was doing, would he have said I'm farming? I really don't know the answer. He would say I'm an excavator working for a farmer. Exactly. But remember, the fact that he was an excavator under this other line of cases I've cited doesn't matter. The man who was excavating the pond was a miner. He was in the mining business. I see I'm out of time, but I'll save my time. Thank you very much. Thank you. Good morning. May it please the Court. My name is Doug Foley. I represent the Apelli Allstate Insurance Company. I'd like to talk about the three-part test that's within the Hoffman and the Schrae case that's cited in our brief. But first, if I may, I'd like to make a general observation about some of the issues which I think are respectfully common to most insurance coverage interpretation situations, and certainly this case is no exception. Whenever language is broken away from a policy and considered in the abstract, a lot of different exercises can be gone through in terms of how policy language may apply and what it could mean. But all cases, all insurance cases, always start with an examination of the facts and an examination of extrinsic evidence. It can be no other way because the question of policy interpretation and policy application is always as applied to the facts. And this situation we have here, of course, is on appeal from summary judgment, which was rightfully granted because the facts are undisputed. And just in very quick summary fashion, and I think the Court's fully aware from the briefs, Mr. Brauchman in this situation had his own business, West Valley Construction, which was not insured by Allstate Insurance Company. He had equipment, a bulldozer, a dump truck, a track hoe, which were the instrumentalities which were involved in the accident, which were not insured by the insurance company. I don't think this is really useful. We do know the facts. But so the basic question is this. What he – a farmer could have had that same equipment on his farm. It wouldn't be that unusual. And a farmer could get up in the morning and say, what am I going to do today? It's part of my farming. I'm going to get rid of this brush and fence so I can plant there, which is what he was trying to do. So the basic question is whether if the farmer subcontracts something that if he did it would be farming, is it still farming? Isn't that the issue? Is there any other issue? Yes. It is part of the same issue. It's a continuum of the issue. The other part of that same issue is what is the business entity that is doing it? Not just simply is it a one-time activity by someone helping out a farmer, but is this a business or a business enterprise which in a – of its essence is an excavation company? And here Judge Mossman, we respectfully submit, is entirely correct in calling this simply a serendipitous occasion where Mr. Brockman simply happened to have this excavated business. So the question isn't really to make it a little more theoretical or abstract. Are you looking at the business or are you looking at the activity? We're looking at both. The activity is the business because the activity is only being conducted through West Valley Construction, which is Mr. Brockman's business. I thought you would have said I'm looking at the business because if you're looking at the activity, it seems to me that you probably do have a problem here. Well, the activity is the business. His business activity is as West Coast Valley or West Valley Construction. That's the equipment that he brings and the trade that he brings wherever he goes. Right. But you agreed with me that if the farmer had done this activity, he would be with the same equipment in the same place at the same time, he would be farming. I would not agree only in this respect because the cases that have been cited to the court are all zoning cases for the most part. They're with respect of the state's power to regulate. The cases that have talked about clearing land, removing soil, doing activities which are preparatory. Whatever the cases say. I thought you agreed earlier and it certainly seems to me to be the case that if a farmer got up in the morning and said what am I going to do today as part of my farming? I'm going to take out my backhoe and get rid of this brush and get rid of these fences because I'm going to plant there. He'd be farming. You don't think so? He would be engaged in an activity preliminary to a farming activity. That is correct. He would be working on his farm as a farmer. I have no question about that. If he had this insurance policy, would he be within the exemption? If the farmer himself? If the farmer himself were doing this activity for himself and were injuring somebody, I don't think there would be any question that if you change the facts, you change the result, there would be coverage. If, in fact, that farmer was doing this activity for himself. All right. So therefore, so then, which is why I say that the ultimate conceptual question is, is it the activity that governs or is it the larger business that the person who's covered is in? It is the policy does describe the business as being an excluded event with the exception being when that business is farming. So you're absolutely correct. That is the analysis and the policy.  I didn't give an answer. I'm sorry. This is a question. I only stated a question, so I can't be correct. I want to know what the answer is. All right. I think the correct answer to the question then would be, in fact, that. You follow the language of the policy, and the policy does, in fact, say it excludes the business activity. But if the business activity itself is farming, there's an exception because this is a personalized policy that covers that person's personal activities but not their business activities. So if it's a personal activity, which is a farming activity, then the exception to the exclusion comes into being. However, as in this case, we respectfully submit, again, these are undisputed facts, we have a business enterprise called West Valley Construction, which can be doing anything, anywhere, and it is fortuitous and serendipitous that that business happens to be attached to a farm on this occasion. It could be clearing land for a highway. It could be clearing land for a hospital. The people that are involved in doing anything preliminary to somebody else's activity doesn't mean they're doing that activity. If Mr. Brockman were clearing the fence post, not so that Mr. Van Asch could farm, but so that Mr. Van Asch could develop a mall on this property, then it wouldn't be farming. It couldn't be farming. There would be absolutely no contention in the case. That is correct. And it wouldn't be farming for Mr. Brockman to do it just because he's on a farm, if he's doing it as West Valley Construction, as in the present case. And I think that's the essential distinction, is the business activity, because the business itself drives the activity. Without that enterprise that he's projecting, wherever he happens to go, and whatever it happens to just fortuitously and serendipitously attach to, doesn't mean that he's actually doing the activity of the person he is working for. Brockman is a licensed excavation contractor, among other things, and that's exactly what he was doing. Correct. He has a CCB number. That is his trade name. He's been doing it since 1990. Apparently, he reformed in 2000 and did it some more. He retired in 2004. He's had a lifelong career of working for builders, for farmers, doing all kinds of activities. If you look at the enterprise, the business itself that drives the activity, in fact, you can see that Mr. Brockman is not involved in a personal lines activity or personal farming, and I think that is exactly correct, and I think the Court has already understood. What do you mean, since you're now using the phrase, by personal farming? Suppose this person had, you know, had as a sole proprietorship Dole Foods.  Would this be covered or not? If he was owning Dole Foods? Yes. If he personally was in charge of Dole Foods and, you know, had this big farm, would that? But it's a farm. It could not because unless the insurance contract insured Dole Foods. What I'm trying to say is it doesn't – there's nothing in here that suggests that the farming has to be subsistence farming. It can be large commercial farming as far as this document is concerned. Is that right? I would respectfully submit I don't think so because this is a personal lines policy, which is personal to the person. It doesn't insure a – if anybody went to their agent or their – an underwriter was looking at this as the discussion was from the last segment and the underwriter was saying, well, who are you and what do you do? And the response was, well, we're Dole Foods or we're West Valley Construction. This policy could not be issued. This policy is not designed to be a business policy because it is a – But on its face it doesn't include farming. So as long as this person is doing it and it's farming, it doesn't have to be subsistence farming or non-profitable farming or it doesn't say anything about the size of the farm. I'm – well, I think at some point in time if the activity is a mega farm or something of that nature, it's clearly going to be something that the underwriter is going to be looking at as being this is not a personal lines activity. Incidental farming, which is obviously called for – It doesn't say incidental. It doesn't say personalized. It says farming. Now, I mean, what you may be saying is that once you start hiring other people to work for you, it presumably doesn't cover the other people, but it would cover this person as long as they're farming. In a personal sense, yes. If this is a business enterprise where you've got – That can't be right because it says business is not farming. So if it's farming, it's not business. Right. If he's excavating, it's not farming. If he's farming, he's farming. I completely agree with the analysis, Your Honor. I think that is absolutely correct. What you're talking about is whether or not the underwriter is vigilant in going out to the resident to see if it's a business or not. But if he's just farming cucumbers and then taking them to the local markets to sell, that would be covered. I completely agree. If it's his farming – If he's sending it to Safeway, it would still be covered, no? I'm sorry? If he's sending it to Safeway, it would still be covered. If he's sending it to Safeway and selling local produce, sure. If this is his business activity as a farming operation, but he's licensed as an excavator and he's contracting out to a farmer. I have great respect for Judge Mossman, but what do I do with this statement of his at ER 251 based on this policy as a whole? And this is the part that bothers me. And its relationship to the other policies that are in the record. To the extent that he took into consideration other policies that had been extended to Brockland by other people. That was incorrect, wasn't it? Well, it is correct to do if there is any allegation of ambiguity. If you get to the second level, the first part of the test is, is there an ambiguity? Under Oregon law, the question is, are there competing reasonable interpretations? But how can there not be? I mean, Judge Mossman thought it was a hard case. We're sitting here throwing around hypotheticals and problems at you. It sounds to me that this is at least ambiguous, because at least we have to decide whether we're looking at the activity that was conducted or the overall business of the person who was conducting the activity. And since this doesn't answer that question, it's ambiguous. Well, if it's ambiguous, if we get past the first step and analytically go to the next step, which is what is the extrinsic evidence. Okay. And the extrinsic evidence is. I thought the next step is context, not extrinsic evidence. No. The first step is to look at, if you look at the Shrae test, which talks about the Hoffman test as well, the first question is, are there two reasonable competing interpretations? We respectfully submit there are not, because of the undisputed facts. If you believe there are, you go to the next step, which is to look at the extrinsic evidence, which is such things as what kind of policies this happens to be, what is Mr. Brockman's intent. He said his intent was to insure his business through Northern Insurance Company, where he had a million-dollar CGL, comprehensive general liability policy. And that's where he said he was insuring his business, his business risk, and his business equipment. And that is his intent, and it's directly expressed from Mr. Brockman himself. That's the second level to go to if you, in fact, find an ambiguity of some kind that you wish to resolve. You can look at the nature of the contracts. He had a million-dollar CGL policy. True. Yes. Through Northern Insurance Company. He had placed his business risk with Northern Insurance Company, and he testified that that was his intent to cover his business. His business, of course, was the entity that was doing the operation at the time of this loss. And Judge Mossman appropriately considered that information and also appropriately considered this is a first-of-the-line policy. Do you consider that the Hoffman, P.D. James case, is the law of Oregon? Yes. And Schrae as well. Schrae appropriately applied Hoffman and appropriately explained to the two, in that particular case, the analytical framework. If there are competing reasonable interpretations, you have to see if there's something else that helps to resolve those competing reasonable interpretations. And that is done by looking at extrinsic evidence. Where does Hoffman Construction mention extrinsic evidence as opposed to drafting context? I'm sorry? Where does Hoffman Construction refer to extrinsic evidence as opposed to context within the document? Well, it does refer to the facts of the case, which are extrinsic evidence. All cases have to look at extrinsic evidence. There is no case that can be decided, quite frankly, without looking at extrinsic evidence. But you have to take the facts, put them within the policy to see what the result is. If there are competing reasonable interpretations, and we respectfully submit that is not the case here, but if there are, then you go to the next step. And this is explained by Schrae and Yogevman, the other cases cited in our brief, to look at the context, the nature of what the undisputed facts are with respect to intent and what the parties' actions are. You can consider extrinsic evidence of intent. You can consider extrinsic evidence of their policies. That's completely allowable. The third step, if that still doesn't break the question of analysis and interpretation, is to go to maxims of construction. And we respectfully submit you don't have to leave the first level in terms of how this should be applied, because the facts themselves show that this is a business activity of West Valley Construction, and that Mr. Brauchman is not farming. He is excavating like he does any place, anywhere, and it wouldn't make any difference where he is providing his excavation services. That doesn't reclassify or recharacterize him as someone providing medical services, legal services, if he's working on a courthouse, anything of that nature, simply because he's there and his blade happens to touch the earth that is associated with the ultimate activity that's going to be taking place. That isn't really the reason. It's because the activity that he is doing is essentially a subcontracted farming activity. If a farmer built a house, he wouldn't be farming. But if he knocked down and cleared some brush and land, a place where he wanted to plant, he would be farming. No? You could certainly say that from a zoning standpoint he's doing that. You can say from his own personal purposes he's doing that. But when someone comes onto his property with their independent license in business, what they are doing for themselves, and we're trying to look at what they're doing for themselves under a personalized policy, is they are excavating. At that point in time, they are not doing whatever that person happens to be ultimately doing with their property. Okay. You're way over your time. Thank you very much. Thank you very much. We'll give you a couple minutes in rebuttal. Say three minutes to make up for the extra time. Three minutes. Members of the Court, if I cannot convince you that extrinsic evidence is wholly out of bounds here, then I have failed my client. Oregon law is absolutely, undeniably, and unmistakably clear on this point. When interpreting an insurance policy, extrinsic evidence is off limits. Please, please read Andre, Tektronix, and the other cases cited in our brief. It isn't done in Oregon. It simply isn't done. In fact, you will find quite an explanation. In fact, the Court of Appeals wonders a bit at the rule, wonders why this is different than other kinds of contracts. But it is, and it's because of Hoffman. What the underwriter thought, might have thought, must have thought, doesn't matter. Let me put a question to you. If Mr. Brockman was not getting paid and he was doing this excavation work as a charity, not for profit, would you claim that he was not doing a business and, therefore, he should be covered? I would claim, under those circumstances, that the definition of farming doesn't make any difference to us because he's not engaged in any kind of business and he'd be within the coverage grant of personal conduct. So he would not be engaged in business because he was doing it out of the goodness of his heart, wasn't getting paid. So there, if that's so, it seems to me that the coverage of Brockman's business is what Brockman's business is, what he's licensed to do. And if that's so, it may mean that the exception is Brockman's farming, not Brockman doing somebody else's farming. I very respectfully disagree with that, Your Honor, for this reason. A couple things. First of all, please keep everything in context with the rules governing this analysis. All state has to write its exclusions explicitly and clearly. There's nothing not explicit about businesses. And this, I think, goes to Judge Gutierrez's question earlier. That definition of farming could have said what is not business is if your business is farming. They could have written it that way. If your business is farming, they could have said if you're farming on your property. None of those things are written into the policy. We simply have one broad statement of the term farming. Farming is not an exclusion. Farming is an exception to exclusion. No. Farming is a definition. I mean, it's an exception to exclusion, yes. It's an exception to exclusion. Farming is giving coverage. Exclusion means not giving coverage. So the rules regarding necessity to be precise in exclusions doesn't apply to exceptions because exceptions are grants of coverage that are taken out of the exclusion. Well, Your Honor, I guess I would respectfully differ in one sense. It's not an exception to an exclusion. It's the definition of a term in an exclusion. That's different. It doesn't accept something. It's a definition. The term business is an exclusion. The term business is then defined in a way that accepts farming from it. This isn't a situation where you're talking about a coverage grant, an exclusion, and then an exception to the exclusion. This defines the exclusion. Well, maybe this just isn't an issue in this case at this point. But in terms of the overall context, the coverage arises only out of personal activities of an insured. Then it says activities related to any business are not covered. But the basic rule is it has to be a personal activity of the insured. So, again, this may not be raised yet, but still an issue of, I'm sorry, of whether this is a personal activity of the insured. We deal with that in our brief. And I don't know of a third category of conduct. It's either personal or it's business. It's one or the other, and that dichotomy is struck, I believe, in that coverage grant. The definition of business does not include farming. So it must, therefore, be personal. It's either fish or fowl. There is no third category. You would agree, I take it, that it doesn't include what your employees do, for example, or does it? It depends on who the named insured is and what that insured is doing. But if the named insured is me and I hire somebody to take up the, to clear the brush, does it include what my employee does? Even if it is farming? If your employees are engaged in an activity and that activity is farming, it's farming. But that's not a personal activity of the insured. But, see, we get things backwards here. We've got to be driven by the content, the terms and conditions of the policy. We must abide by the definition. The policy takes us where we have to go. You don't think the policy at least requires that whatever is done has to be done by the person? No. That's not what personal means? No. No. They could have easily written this policy such that the activity must be engaged in by the farmer. They did not write it that way. In fact, if you look at the definition, it doesn't even talk about the insured or the exclusion. It talks about person. It's much, much broader. And to briefly respond to the comments about serendipity and fortuity, that's what insurance is. It's all about accidents. It's all about risk. And we don't know what's going to happen. If Allstate doesn't like this result, they are free to write the policy differently next time. I suspect they may already have fixed this. They don't get to retroactively write the policy to address a claim that has already accrued. Thank you very much, counsel. Thank you to counsel. We're in an interesting little puzzle. The case of Allstate Insurance Company v. Van der Hay is submitted, and we will go on. The next two cases are submitted under briefs, Kenfield and Domenico, and we will go on to the last case of the day and of the week, Pablada v. Daniels.
judges: Berzon, Bea, Gutierrez